Filing # 159184008 E-Filed 10/13/2022 02:26:53 PM          CACE-22-015193

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

JOHN R. MCCABE, SR. and
RITA A. MCCABE,

      Plaintiffs,

vs.

AEROJET ROCKETDYNE, INC., *et al.*,

      Defendants.

CIVIL DIVISION 27 –
PRODUCTS LIABILITY ASBESTOS

CASE NO. CACE-22-015193

Dawn Besserman: 1000428
Jennifer Green: 1036184

SUMMONS

THE STATE OF FLORIDA:

To Each Sheriff of Said State:

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint on Defendant:

BOEING COMPANY, THE, Individually and as successor-in-interest to Rockwell-Standard, l/k/a North American Rockwell, f/n/a Rockwell International, as successor-by-merger to General Motors Corporation and its aviation division Rocketdyne, as successor-in-interest to North American Aviation
Corporation Service Company
1201 Hays Street
Tallahassee, FL 32301

Each defendant is required to serve written defenses to the Complaint on Plaintiffs' attorney, to wit, whose address is: Dawn Besserman, Esq., Maune Raichle Hartley French & Mudd, LLC, 777 S. Harbour Island Blvd., Ste. 310, Tampa, FL 33602, [O] 314-241-2003 / [F] 314-241-4838, within twenty (20) days after service of this Summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiffs' attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

DATED ON _____ OCT 17 2022

by: _____
as Deputy Clerk

BRENDA D. FORMAN

(Court Seal)

Filing # 159026865 E-Filed 10/11/2022 05:34:21 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CIVIL DIVISION 27 – PRODUCTS
LIABILITY ASBESTOS

CASE NO. _____

Dawn Besserman: 1000428
Jennifer Green: 1036184

JOHN R. MCCABE, SR. and
RITA A. MCCABE,

        Plaintiffs,

vs.

**AEROJET ROCKETDYNE, INC.;**
**BASF CATALYSTS LLC;**
**BOEING COMPANY, THE**, Individually and
as successor-in-interest to Rockwell-Standard,
l/k/a North American Rockwell, f/n/a Rockwell
International, as successor-by-merger to General
Motors Corporation and its aviation division
Rocketdyne, as successor-in-interest to North
American Aviation;
**BOEING COMPANY, THE**, f/k/a McDonnell
Douglas Corporation;
**CRANE CO.;**
**CURTISS-WRIGHT CORPORATION;**
**DEXTER HYSOL AEROSPACE LLC;**
**DOW CHEMICAL COMPANY, THE;**
**EATON AEROQUIP, LLC;**
**EATON CORPORATION;**
**FLINT HILLS RESOURCES; LLC;**
**FLOWSERVE US, INC.**, successor-in-interest
Edward Valve & Manufacturing Company;
**FLOWSERVE US, INC.**, successor-in-interest
Rockwell Manufacturing Co.;
**GENERAL CABLE CORPORATION**, f/k/a
Prysmian Cables and Systems USA, LLC, f/k/a
Pirelli Cables & Systems, f/k/a Pirelli Cable
Corporation, as successor-in-interest to Galite, Inc.;
**GOODRICH CORPORATION**, f/k/a The BF
Goodrich Company;
**GOODYEAR TIRE & RUBBER COMPANY, THE;**
**H.B. FULLER COMPANY;**
**HENKEL CORPORATION**, f/k/a Henkel

Loctite Corporation, as successor-in-interest
to Loctite Corporation and Permatex Company, Inc.;
**HLI SOLUTIONS, INC.,** f/k/a Hubbell Lighting, Inc.,
as successor-in-interest to Prescolite, Inc.;
**HONEYWELL INTERNATIONAL, INC.,** f/k/a
Honeywell, Inc.;
**HONEYWELL INTERNATIONAL, INC.,** Individually
and as successor to AlliedSignal, Inc. and The
Bendix Corporation;
**IMO INDUSTRIES, INC.,** Individually and as
successor-in-interest to Adel Fasteners;
**INTERNATIONAL BUSINESS MACHINES CORPORATION;**
**KOCH INDUSTRIES INC.;**
**MERITOR, INC., f/k/a ARVINMERITOR, INC.,**
Individually and as successor-by-merger to Arvin
Industries, Inc. and Meritor Automotive, Inc., f/k/a
Rockwell Automotive, Inc., successor to Rockwell
International;
**MORTON INTERNATIONAL, LLC,** Individually
and as successor to Morton Thiokol, successor-by-merger
to Thiokol Corporation;
**NORTHROP GRUMMAN CORPORATION;**
**PARKER-HANNIFIN CORPORATION,** Individually
and as successor-in-interest to Cleveland Wheel & Brake;
**PFIZER, INC.;**
**PNEUMO ABEX LLC,** Individually and as
successor-by-merger to Pneumo Abex Corporation,
successor-in-interest to Abex Corporation f/k/a
American Brake Shoe Company, f/k/a American
Brake Shoe and Foundry Company including the
American Brakeblok division, successor-by merger
to the American Brake Shoe and Foundry Company
and the American Brakeblok Corporation, f/k/a the
American Brake Materials Corporation;
**REDCO CORPORATION**, f/k/a Crane Co.;
**ROHR, INC.;**
**SCHNEIDER ELECTRIC USA, INC.,** f/k/a Square
D Company;
**SHELL USA, INC.;**
**SPECIALTY CABLE CORP.,** Individually and as
successor-in-interest Pirelli Cable Corporation, as
successor-in-interest to Galite, Inc.;
**TEX-COTE LLC;**
**VANDERBILT MINERALS, LLC,** f/k/a R.T.
Vanderbilt Company, Inc.;
**WYETH HOLDINGS LLC,** f/k/a Wyeth Holdings

Corporation, f/k/a American Cyanamid Company;

        Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

1.    This is an action seeking damages in excess of Thirty Thousand Dollars ($30,000.00), exclusive of interest and costs.

2.    Plaintiffs JOHN R. MCCABE, SR. and RITA A. MCCABE are residents of the State of Florida and citizens of the United States. JOHN R. MCCABE, SR. was diagnosed as having asbestos-related disease, specifically malignant epithelioid mesothelioma, on or about June 3, 2022.

3.    Defendants are as follows:

    a.    AEROJET ROCKETDYNE, INC. is an Ohio corporation with its principal place of business in California. and may be served through its registered agent, CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

    b.    BASF CATALYSTS LLC is a Delaware corporation with its principal place of business in New Jersey and may be served through its registered agent, CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

    c.    BOEING COMPANY, THE, Individually and as successor-in-interest to Rockwell-Standard, l/k/a North American Rockwell, f/n/a Rockwell International, as successor-by-merger to General Motors Corporation and its aviation division Rocketdyne, as successor-in-interest to North American Aviation is a Delaware corporation with its principal place of business in Illinois and may be served through its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

    d.    BOEING COMPANY, THE, f/k/a McDonnell Douglas Corporation is a Delaware corporation with its principal place of business in Illinois and may be served through its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

    e.    CRANE CO. is a Delaware corporation with its principal place of business in Connecticut and may be served through its registered agent, CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

f.      CURTISS-WRIGHT CORPORATION is a Delaware corporation with its principal place of business in New Jersey and may be served through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

g.      DEXTER HYSOL AEROSPACE LLC is a Delaware corporation with its principal place of business in Connecticut and may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

h.      DOW CHEMICAL COMPANY, THE, is a Delaware corporation with its principal place of business in Michigan and may be served through its registered agent, CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

i.      EATON AEROQUIP, LLC is an Ohio corporation with its principal place of business in Ohio and may be served through its registered agent, CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

j.      EATON CORPORATION, is an Ohio corporation with its principal place of business in Ohio and may be served through its registered agent, CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

i.      FLINT HILLS RESOURCES, LLC is a Delaware Corporation with its principal place of business in Kansas and may be served through its registered agent, United Agent Group, Inc., 350 S. Northwest Highway #300, Park Ridge, IL 600683.

k.      FLOWSERVE US, INC., successor-in-interest Edward Valve & Manufacturing Company is a Delaware corporation with its principal place of business in Texas and may be served through its registered agent, CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

l.      FLOWSERVE US, INC., successor-in-interest Rockwell Manufacturing Co. is a Delaware corporation with its principal place of business in Texas and may be served through its registered agent, CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

m.      GENERAL CABLE CORPORATION, f/k/a Prysmian Cables and Systems USA, LLC, f/k/a Pirelli Cables & Systems, f/k/a Pirelli Cable Corporation, as successor-in-interest to Galite, Inc. is a Delaware corporation with its principal place of business in Kentucky and may be served through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

n.  GOODRICH CORPORATION, f/k/a The BF Goodrich Company is a New York corporation with its principal place of business in North Carolina and may be served through its registered agent, CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

o.  GOODYEAR TIRE & RUBBER COMPANY, THE, is a Ohio corporation with its principal place of business in Ohio and may be served through its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

p.  H.B. FULLER COMPANY is a Minnesota corporation with its principal place of business in Minnesota and may be served through its registered agent, CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

q.  HENKEL CORPORATION, f/k/a Henkel Loctite Corporation, as successor-in-interest to Loctite Corporation and Permatex Company, Inc. is a Delaware corporation with its principal place of business in Connecticut and may be served through its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

r.  HLI SOLUTIONS, INC., f/k/a Hubbell Lighting, Inc., as successor-in-interest to Prescolite, Inc. is a Connecticut corporation with its principal place of business in Connecticut and may be served through its registered agent, Corporate Creations Network Inc., 801 US Highway 1, North Palm Beach, FL 33408.

s.  HONEYWELL INTERNATIONAL, INC., f/k/a Honeywell, Inc. is a Delaware corporation with its principal place of business in North Carolina and may be served through its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

t.  HONEYWELL INTERNATIONAL, INC., Individually and as successor to AlliedSignal, Inc. and The Bendix Corporation is a Delaware corporation with its principal place of business in North Carolina and may be served through its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

u.  IMO INDUSTRIES, INC., Individually and as successor-in-interest to Adel Fasteners is a Delaware corporation with its principal place of business in Maryland and may be served through its registered agent, c/o Agent/Officer, CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

v.  INTERNATIONAL BUSINESS MACHINES CORPORATION is a New York corporation with its principal place of business in New York and may

be served through its registered agent, CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

w.    KOCH INDUSTRIES INC. is a Kansas corporation with its principal place of business in Kansas and may be served through its registered agent, The Corporation Company, Inc., 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

x.    MERITOR, INC., f/k/a ARVINMERITOR, INC., Individually and as successor-by-merger to Arvin Industries, Inc. and Meritor Automotive, Inc., f/k/a Rockwell Automotive, Inc., successor to Rockwell International is a Nevada corporation with its principal place of business in Michigan and may be served through its registered agent, CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

y.    MORTON INTERNATIONAL, LLC, Individually and as successor to Morton Thiokol, successor-by-merger to Thiokol Corporation is an Indiana corporation with its principal place of business in Pennsylvania and may be served through its registered agent, CT Corporation System, 208 South LaSalle St., Suite 814, Chicago, IL 60604.

z.    NORTHROP GRUMMAN CORPORATION is a Delaware corporation with its principal place of business in Virginia and may be served through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

aa.    PARKER-HANNIFIN CORPORATION, Individually and as successor-in-interest to Cleveland Wheel & Brake is an Ohio corporation with its principal place of business in Ohio and may be served through its registered agent, CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

bb.    PFIZER, INC. is a Delaware corporation with its principal place of business in New York and may be served through its registered agent, CT Corporation System, 1200 South Pine Island Road Plantation, FL 33324.

cc.    PNEUMO-ABEX LLC, Individually and as successor-by-merger to Pneumo Abex Corporation, successor-in-interest to Abex Corporation f/k/a American Brake Shoe Company, f/k/a American Brake Shoe and Foundry Company including the American Brakeblok division, successor-by merger to the American Brake Shoe and Foundry Company and the American Brakeblok Corporation, f/k/a the American Brake Materials Corporation is a Delaware corporation with its principal place of business in New Jersey and may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

dd.   REDCO CORPORATION, f/k/a Crane Co. is a Delaware corporation with its principal place of business in Connecticut and may be served through its registered agent, CT Corporation System, 208 South LaSalle St., Suite 814, Chicago, IL 60604.

ee.   ROHR, INC. is a Delaware corporation with its principal place of business in Delaware and may be served through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

ff.   SCHNEIDER ELECTRIC USA, INC., f/k/a Square D Company is a Delaware corporation with its principal place of business in Massachusetts and may be served through its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

gg.   SHELL USA, INC. is a Delaware corporation with its principal place of business in Texas and may be served through its registered agent, CT Corporation System, 208 South LaSalle St., Suite 814, Chicago, IL 60604.

hh.   SPECIALTY CABLE CORP., Individually and as successor-in-interest Pirelli Cable Corporation, as successor-in-interest to Galite, Inc. is a Connecticut corporation with its principal place of business in Connecticut and may be served through its registered agent, c/o Agent/Officer, Brian O'Connor, 2 Tower Drive, Wallingford, CT, 06492

ii.   TEX-COTE LLC is a Missouri corporation with its principal place of business in Florida and may be served through its registered agent, CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

jj.   VANDERBILT MINERALS, LLC, f/k/a R.T. Vanderbilt Company, Inc. is a Delaware corporation with its principal place of business in Connecticut and may be served through its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

kk.   WYETH HOLDINGS LLC, f/k/a Wyeth Holdings Corporation, f/k/a American Cyanamid Company VANDERBILT MINERALS, LLC, f/k/a R.T. Vanderbilt Company, Inc. is a Maine corporation with its principal place of business in New York and may be served through its registered agent, CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

4.      Defendants are corporations who are amenable to jurisdiction in the Courts of

Florida because they are either Florida corporations or foreign corporations that now conduct or

have conducted business or business ventures, or have had offices or agencies within Florida,

which subjects them to jurisdiction within Florida. The alleged causes of action arise out of, or are incidental to, the business or business ventures conducted within Florida by Defendants or through which Defendants purposefully directed themselves at Florida or otherwise could reasonably have foreseen that their activities would subject them to jurisdiction of the Florida courts. Each foreign corporation has through brokers, jobbers, wholesalers, or distributors sold, consigned, or leased tangible or intangible personal property to persons in this state. Each foreign corporation has committed wrongful acts either outside or inside Florida causing injury to JOHN R. MCCABE, SR. Each foreign corporation derives substantial revenue from interstate or international commerce and should reasonably have expected its acts to have consequences in Florida. Each foreign corporation has conducted substantial and not isolated activity within Florida.

5.    Plaintiffs allege that Defendants have, at all times material to these causes of action, through and including the present, maintained sufficient contact with the State of Florida and/or transacted substantial revenue producing business in the State of Florida to subject them to the jurisdiction of this Court pursuant to Florida Statute §§48.181 and/or 48.182 and/or 48.193 and/or 47.16.

6.    Defendants are corporations who are amenable to jurisdiction in the Courts of Florida for numerous reasons, including, but not limited to:

a.    Defendants are either Florida corporations or foreign corporations that now conduct or have conducted business or business ventures within Florida, or have had offices or agencies within Florida, which subjects them to jurisdiction within Florida;

b.    Plaintiffs' alleged causes of action arise out of or relate to the business or business ventures conducted by Defendants within Florida or through which Defendants purposefully availed themselves of Florida law, invoked the benefits and protections of Florida law, or otherwise could reasonably have foreseen that their activities would subject them to jurisdiction of the Florida courts;

c.  Defendants' asbestos was asbestos-containing products were sold in Florida, Defendants were aware that their products would be sold in Florida, and Defendants directly or indirectly availed themselves of the Florida market as a market for their products;

d.  Each foreign corporation Defendant engaged in a course of conduct that was nationwide, including within Florida, in its distribution and sale of asbestos or asbestos-containing products and in its failure to provide adequate warnings;

e.  Each foreign corporation Defendant specifically targeted Florida, directly or indirectly, as a market for its asbestos or asbestos-containing products;

f.  Defendants' asbestos or asbestos-containing products acted upon Mr. McCabe in Florida;

g.  Each foreign corporation has through agents, employees, brokers, jobbers, wholesalers, or distributors sold, consigned, or leased tangible or intangible personal property to persons in Florida;

h.  Each foreign corporation Defendant designed, developed, tested, manufactured, assembled, distributed, labeled, packaged, supplied, and/or created a marketing strategy for its asbestos products in Florida;

i.  Each foreign corporation has committed wrongful acts either outside or inside Florida causing injury to Plaintiff JOHN R. MCCABE, SR., including breaching their duty to warn persons such as Mr. McCabe of the dangers of their products and/or their continuing duty to warn to avoid further asbestos exposures;

j.  Each foreign corporation Defendant derives substantial revenue from interstate or international commerce and should reasonably have expected its acts to have consequences in Florida or in any other state that would subject it to liability in those states;

k.  Each foreign corporation Defendant has conducted substantial and not isolated activity within Florida;

l.  Each foreign corporation Defendant purchased asbestos-containing components that were incorporated into its asbestos products in Florida and/or purchased asbestos-containing components that were manufactured in Florida or from Florida suppliers;

m.  Each foreign corporation Defendant registered for the right to conduct intrastate business in Florida, conducted intrastate business in Florida pursuant to such registration, maintained a registered agent for service of

process in Florida, and/or was served with process in this case via its Florida registered agent; and/or

n.    The State of Florida has an overwhelming interest in exercising jurisdiction over this case and the causes of action alleged in it for numerous reasons including but not limited to:

    i.    Plaintiffs are Florida residents;

    ii.    Plaintiff was a Florida resident when he was exposed to Defendants' products;

    iii.    Plaintiff and/or the others who purchased the Asbestos Products at issue in this case to which Plaintiff was exposed purchased Defendants' toxic asbestos products in Florida;

    iv.    Plaintiff was exposed to Defendants' asbestos products in Florida;

    v.    Florida has a strong interest in protecting its citizens or consumers within the State from exposure to dangerous products; and

    vi.    Florida has a strong interest in providing its citizens or consumers within the State with an effective and efficient forum for resolution of disputes regarding injuries to them, particularly injuries caused by actions in the State and/or that manifest themselves in the State.

7.    Each Defendant:

    a.    compounds or compounded;
    b.    converts or converted;
    c.    designs or designed;
    d.    imports or imported;
    e.    installs or installed;
    f.    manipulates or manipulated;
    g.    manufactures or manufactured;
    h.    mines or mined;
    i.    processes or processed;
    j.    rebranded products and materials manufactured by other so as to be a manufacturer under Florida law;
    k.    removes or removed;
    l.    requires or required the use of;
    m.    specifies or specified the use of;
    n.    supervises or supervised the use of;
    o.    uses or used;
    p.    sells or sold; and/or
    q.    supplies or supplied

asbestos or products (a.) containing substantial amounts of asbestos and/or (b.) products designed to be used with asbestos containing materials and/or (c.) products that foreseeably would be used with asbestos-containing materials (collectively, "Asbestos Products").

8.      Defendants' Asbestos Products include, but are not limited to: electrical systems, as well as asbestos-containing wiring and components; asbestos-containing aircraft and spacecraft and their components and component parts, including computers, engines, braking systems and brake assembly insulators, gaskets, valves, fire sleeves, fasteners, clamps, fittings, landing gear, linings, cowlings, exhaust and heat shields, adhesives, sealants, coatings, and insulation; asbestos-containing replacement parts including brakes and gaskets; and talc containing asbestos.

9.      Plaintiffs allege that Defendants have, at all times material to these causes of action, and through and including the present, maintained business in the State of Florida to subject them to the jurisdiction of this Court pursuant to Florida Statute 48.181 and/or 48.182 and/or 48.193 and/or 47.16.

10.     The allegations of exposure in this Complaint are expressly pled in the alternative with respect to the Defendants as allowed by Florida Rules, including Rule 1.110. Plaintiffs allege Plaintiff JOHN R. MCCABE, SR. was exposed to asbestos for which the Defendants in this case are legally responsible as pled in various counts below. Discovery may demonstrate that one or more Defendants in this matter are not legally responsible under one or more counts for Mr. McCabe's exposures to asbestos that caused his cancer. In making the allegations in this Complaint, Plaintiffs are not "admitting" that any particular exposure occurred.

## BACKGROUND

11.     Plaintiff JOHN R. MCCABE, SR. worked with and was exposed to Defendants'
Asbestos Products that were mined, manufactured, or distributed by Defendants, or their
predecessors.

12.     Plaintiff was exposed to asbestos dust when he worked with and around
Defendants' Asbestos Products.

13.     Plaintiff, and those working with and around him, used Defendants' Asbestos
Products in their intended manner and without significant change in their condition. Plaintiff and
those working with and around him relied upon Defendants to instruct them, and those working
around them, regarding the proper methods of handling the products, being unaware of the
dangerous properties of asbestos.

14.     From approximately 1953 to 1957, Plaintiff John R. McCabe Sr. served as an
aircraft technician in the United States Air Force. After completing basic training at Lackland Air
Force Base located in San Antonio, Texas, he was stationed for eight months at Shepherd Air
Force Base in Wichita Falls, Texas. Then from 1953 to 1954, Plaintiff was stationed at Goose Bay
Air Force Base in Goosebay Labrador. For the last two years of his service, from 1955 to 1957,
Plaintiff was stationed at Grandview Air Force Base in Missouri. Plaintiff John R. McCabe Sr.
performed maintenance and repair work, including, but not limited to, engine work and
maintenance, and the repair and replacement of asbestos-containing aircraft components and
component parts (e.g. auxiliary power units, hoses, fire sleeves, clamps, gaskets, fasteners, wiring,
brakes and brake assemblies and brake pads, *etc.*), on military aircraft. Additionally, Plaintiff was
also regularly and frequently proximate to and in the immediate vicinity of others performing the
same work with the same products. These component parts contained asbestos which had been

mined, milled, manufactured, distributed, delivered, supplied, sold, marketed, labeled, re-labeled, specified, recommended, used and/or installed by defendants and/or the alternate entities.

15.     In approximately 1958, Plaintiff John R. McCabe Sr. worked for McDonnell Aircraft Corporation, l/k/a McDonnell Douglas, in St. Louis, Missouri. He prepared jets for shipment and performed maintenance and repair work on asbestos-containing aircraft components and component parts (e.g. engines, brakes, gaskets, hoses, fire sleeves, clamps, wiring, *etc.*, as well as adhesives, epoxies, and other materials). He also repaired and replaced asbestos-containing electrical components and component parts.

16.     From approximately 1958 to 1963, and 1963 to 1965, Plaintiff John R. McCabe Sr. worked for Aerojet located in Cape Canaveral, Florida and El Monte, California, respectively. While in Florida, he inspected, dismantled, adjusted, overhauled, repaired, fabricated, and assembled spaceship and rocket/missile propulsion system components, including computers on orbiters. Additionally, he maintained regulators, propulsion systems, tumblers, and related components (e.g. cowlings, exhaust and heat shields, pumps, valves, steam traps, fittings, missile liner and pavement, and other equipment). These repairs often required the removal and replacement of adhesives, epoxies, packing, gaskets, and other materials). While in California, he performed the same work with the same products.

17.     From approximately 1965 to 2000, Plaintiff John R. McCabe Sr. worked at Cape Canaveral in Florida. From approximately 1965-1968 (propulsion technician); 1975-1980 (pad leader); and again from 1984-2000 (Astronaut Support and Vehicle Integrated Training), Mr. McCabe was employed by Lockheed working at Cape Canaveral in Florida. From approximately 1968 - 1972, Mr. McCabe was employed by Bendix working as a subcontractor modifying launch pads at Cape Canaveral in Florida.  From approximately 1972-1973, Mr. McCabe was employed

by Martin Marietta Technologies working as a subcontractor at the launch pads at Cape Canaveral, Florida. From approximately 1974- 1975, Mr. McCabe worked for PRC working as a subcontractor at the launch pads. Then from approximately 1980-1984, Mr. McCabe, working for Lockheed,worked at the Marshall Islands as a pad supervisor. Throughout the entire period of his employment, Mr. McCabe worked in the vicinity of, and in close proximity to, other tradesmen and outside contractors performing their work duties and responsibilities.

18.     During his occupational work described above, Plaintiff JOHN R. MCCABE, SR. was exposed to and inhaled asbestos fibers emanating from certain products. He also inhaled asbestos while working around others. These products were manufactured, sold, distributed, supplied, used, and/or installed by Defendants, and included asbestos-containing machinery, vehicles, equipment, replacement parts.

19.     Plaintiff JOHN R. MCCABE, SR.'s exposure to and inhalation of asbestos from Defendants' Asbestos Products caused him to contract an asbestos-related disease, specifically malignant epithelioid mesothelioma.

20.     As a direct and proximate result of the conduct described, Plaintiff incurred damages in the form of the cost of treatment for his disease and injuries. As a direct and proximate result of Defendants' conduct, Plaintiff's enjoyment of life has been impaired.

### COUNT I – NEGLIGENCE
### (ALL DEFENDANTS)

21.     Plaintiffs JOHN R. MCCABE, SR. and RITA A. MCCABE incorporate by reference into Count I all other relevant allegations in this Complaint.

22.     At the time of Plaintiff JOHN R. MCCABE, SR.'s exposure to Defendants' Asbestos Products, Defendants knew, or in the exercise of ordinary care should have known, that the use of their Asbestos Products was hazardous to the health of workers, consumers, bystanders,

and family members. Plaintiff JOHN R. MCCABE, SR. relied upon the skill and knowledge of Defendants, who had a duty to advise users of their products and those who were reasonably expected to use, work with, service, repair and/or replace any of their Asbestos Products, of the proper methods of handling and working around asbestos-containing materials.

23.     At the time of Plaintiff JOHN R. MCCABE, SR.'s exposure to Defendants' Asbestos Products, Defendants knew, or in the exercise of ordinary care should have known that the potential hazards of their Asbestos Products were not obvious or otherwise known to ordinary users such as Plaintiff JOHN R. MCCABE, SR., or those working with and around him. Defendants had a duty to warn Plaintiff JOHN R. MCCABE, SR., and those working with and around him, of any information regarding the potential dangers of asbestos and the proper methods of handling and working around asbestos and asbestos-containing materials.

24.     Defendants had a duty to exercise reasonable and ordinary care to Plaintiff JOHN R. MCCABE, SR. Defendants negligently breached that duty in one, some, or all of the following respects:

    a.    Defendants failed to adequately warn Plaintiff and other users that their products contained asbestos and that exposure to such asbestos-containing products could be injurious to health;

    b.    Defendants failed to adequately warn Plaintiff and other users that their Asbestos Products were asbestos-containing and that exposure to asbestos could be injurious to health;

    c.    Defendants failed to adequately warn Plaintiff and other users that the ordinary handling, use, and servicing of their Asbestos Products would cause asbestos to become airborne and could be injurious to health;

    d.    Defendants failed to adequately warn Plaintiff that their Asbestos Products, including replacement component products, would more likely than not also contain asbestos and that handling and use of those asbestos-containing parts could be injurious to health;

e.   Defendants failed to provide with their Asbestos Products necessary information regarding how Plaintiff could and should protect himself from asbestos in connection with the use of their Products, including safe handling and use, appropriate protective clothing and equipment, and other protective measures;

f.   Defendants failed to take reasonable steps to provide Plaintiff with information regarding the danger of exposure to asbestos in connection with their Asbestos Products, when those products were being used or serviced by others;

g.   Defendants failed to provide warnings to Plaintiff regarding the danger of past exposures to asbestos in connection with the use of Defendants' Asbestos Products as additional information regarding the dangers of asbestos became available to Defendants;

h.   Defendants failed to exercise reasonable care to develop, publish, adopt and disseminate safe methods of service, handling and installing asbestos-containing materials in connection with their Asbestos Products having undertaken to develop, publish, adopt and disseminate other information regarding the service, handling and installation of such materials;

i.   Defendants failed to use reasonable care to ensure that their Asbestos Products were only distributed to, serviced and/or handled by entities and individuals who had been sufficiently trained in their safe use;

j.   Defendants failed to provide accurate information to Plaintiff and other members of the public regarding the dangers of asbestos and their Asbestos Products by advertising, labeling and otherwise;

k.   Defendants further negligently misrepresented, affirmatively and by omission, that the Asbestos Products they manufactured, sold, or distributed were safe in their ordinary and foreseeable use, when such representations were untrue;

l.   Defendants failed to provide Plaintiff the information they provided to their own employees regarding the hazards of asbestos and their Asbestos Products;

m.   Defendants failed to test their Asbestos Products and/or failed to disseminate the results of the tests that they did conduct;

n.   Defendants negligently misrepresented that their asbestos-containing replacement parts for their Asbestos Products had been tested for safety when, in fact, no testing had been performed to ascertain the safety of the

users of those parts and those who were known likely to come into contact with asbestos during the anticipated use and handling of such Products;

o. Defendants failed to warn or advise Plaintiff and others to cease all future exposure to asbestos, fumes, smoke, dust and fibers, and to keep away from the home environment asbestos dust and fibers on work clothes and tools; and

p. Defendants failed to develop and to place on the market non-asbestos-containing materials that were reasonably available to them.

25. Defendants' Asbestos Products were used in the manner in which they were intended to be used; however, Defendants' Asbestos Products failed to perform their purposes safely in that they caused Plaintiff JOHN R. MCCABE, SR. to develop terminal cancer, malignant mesothelioma and/or other asbestos-related diseases.

26. Plaintiff's illness was a direct and proximate result of Defendants' negligence, as described above, and Plaintiff has suffered damages as described herein.

WHEREFORE, Plaintiffs JOHN R. MCCABE, SR. and RITA A. MCCABE, demand compensatory damages and trial by jury on all issues so triable in this cause.

## <u>COUNT II – STRICT LIABILITY</u>
## <u>(ALL DEFENDANTS)</u>

27. Plaintiffs incorporates by reference into Count II all other relevant allegations in this Complaint.

28. Defendants' Asbestos Products were defective in design at the time they were manufactured and at the time Plaintiff JOHN R. MCCABE, SR. was exposed to them.

29. At the time Plaintiff JOHN R. MCCABE, SR. used and otherwise came into contact with Defendants' Asbestos Products, Defendants' Asbestos Products were being used in the manner and environment intended and without substantial or unexpected change affecting their condition.

30.   Defendants' Asbestos Products contained design defects that made them unreasonably dangerous and unfit for their intended use, in that the Products were designed to contain asbestos.

31.   Defendants' Asbestos Products, including their component parts, were designed and intended to be replaced during their working lifetime, asbestos being highly hazardous and harmful to the human body.

32.   At the time of Plaintiff JOHN R. MCCABE, SR.'s exposure to Defendants' Asbestos Products, Defendants Asbestos Products were unreasonably dangerous because of their design in that they failed to perform as safely as an ordinary consumer would expect when used in the intended manner and/or in a manner reasonably foreseeable to Defendants.

33.   At the time of Plaintiff's exposure to Defendants' Asbestos Products, Defendants' Asbestos Products were unreasonably dangerous because of their design, in that the risk of harm from the design of those Products in containing asbestos outweighed the benefits of use of the Products.

34.   Defendants' Asbestos Products were also defective in that they failed to contain sufficient warnings to advise Plaintiff JOHN R. MCCABE, SR. and those working around him that the ordinary and expected uses of the Products could cause grave harm.

35.   The lack of sufficient warning further rendered Defendants' Asbestos Products unreasonably dangerous and unfit for their intended and expected use.

36.   Defendants' Asbestos Products were further defective because non-asbestos-containing substitutes were reasonably available to Defendants.

37.     Plaintiff JOHN R. MCCABE, SR.'s illness, was a direct and proximate result of the defects in Defendants' Asbestos Products described above, and Plaintiffs suffered damages as described herein.

WHEREFORE, Plaintiffs JOHN R. MCCABE, SR. and RITA A. MCCABE demand compensatory damages and trial by jury on all issues so triable in this cause.

### COUNT III - NEGLIGENCE AGAINST MANUFACTURING DEFENDANTS (ALL DEFENDANTS)

38.     Plaintiffs incorporate by reference into Count III all other relevant allegations in this Complaint.

39.     The illness and disabilities of Plaintiff JOHN R. MCCABE, SR. are a direct and proximate result of the negligence of Defendants and/or their predecessor-in-interest in that said entities produced, designed, sold, installed and/or otherwise put into the stream of commerce, asbestos, asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products, which Defendants knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Plaintiff JOHN R. MCCABE, SR.'s health and well-being.

40.     Defendants supplied their asbestos-containing equipment and products to the premises at which Plaintiff JOHN R. MCCABE, SR. was exposed to their products, and Defendants further controlled the installation and repair of their asbestos-containing products and equipment at the premises. The installation and repair work created airborne asbestos dust as a result of the manipulation of asbestos-containing thermal insulation on Defendants' equipment and products. Work that disturbs asbestos-containing thermal insulation in a manner that creates airborne asbestos dust is dangerous work by its very nature. The dangerous character of this work

is inherent in the work. Further, the manner in which such work is directed to be done can exacerbate the inherent danger in the work.

41. Any order, direction, or instruction to perform such work must acknowledge the inherently dangerous nature of the work and the required precautions necessary to avoid unreasonable danger, which include, but are not limited to:

a. Isolation of the work area before performing the work;

b. Use of measures to prevent and/or minimize the release of airborne asbestos dust when performing the work;

c. General and specific ventilation to prevent any asbestos dust that is created from escaping the immediate work area and exposing other workers to the deadly dust.

d. That any workers in the area where dust is created must wear appropriate respiratory and other protective gear and take measures to not expose themselves to asbestos on their work clothing; and

e. Thorough and appropriate warnings to the workers in the area so that they have a sane appreciation of the risks to which they are exposed and the strict precautions that must be taken to avoid those risks.

42. Defendants ordered, directed, and/or instructed workers to remove and replace the insulation in a manner that was certain to create asbestos-containing dust, without isolating others from the work area, and without taking the necessary precautions to avoid the unreasonable danger inherent in the exposure to asbestos-containing dust.

43. Defendants thereby created hazardous and deadly conditions to which Plaintiff JOHN R. MCCABE, SR. was exposed and which caused Plaintiff JOHN R. MCCABE, SR. to be exposed to a large amount of asbestos fibers.

44. Defendants were further negligent in one, some, and/or all of the following respects, among others, being the proximate cause of Plaintiff JOHN R. MCCABE, SR.'s illness and disabilities:

a.   in failing to provide Plaintiff JOHN R. MCCABE, SR. with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Plaintiff JOHN R. MCCABE, SR. from being harmed and disabled by exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

b.   in failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling and installing asbestos and/or asbestos-containing products, or utilizing the machinery requiring or calling for the use of asbestos and/or asbestos-containing products in a safe manner;

c.   in failing to develop and utilize a substitute material or design to eliminate asbestos fibers in the asbestos-containing products, and/or the machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

d.   in failing to properly design and manufacture asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

e.   in failing to properly test said asbestos-containing products or machinery before they were released for consumer use;

f.   in failing to recall and/or remove from the stream of commerce said asbestos-containing products or machinery or machinery requiring or calling for the use of asbestos and/or asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products or machinery;

g.   Failing to adequately warn Plaintiff JOHN R. MCCABE, SR. that their equipment was asbestos-containing and/or called for and required the use of asbestos or asbestos-containing products and that exposure to asbestos could be injurious to his health;

h.   Failing to adequately warn Plaintiff JOHN R. MCCABE, SR. that the ordinary handling, use and servicing of their asbestos-containing equipment and/or equipment calling for the use of or requiring asbestos replacement parts would cause asbestos to become airborne and could be injurious to his health;

i.     Designing equipment that by operation degraded the fungible asbestos-components used in/on their equipment and caused the dangers encountered by workers such as Plaintiff JOHN R. MCCABE, SR.;

j.     Creating the asbestos hazards encountered by workers such as Plaintiff JOHN R. MCCABE, SR.;

k.     Designing, expecting, instructing and/or intending for their equipment to utilize asbestos-containing components as designed by Manufacturing Defendants, their equipment necessarily required the manipulation, removal and/or replacement of asbestos-containing components during the intended, expected and required use and periodic maintenance of Manufacturing Defendants' equipment;

l.     Manufacturing, rebranding, distributing, selling and/or otherwise placing into the stream of commerce various asbestos-containing products, including, but not asbestos-containing replacement parts, equipment and/or equipment that called for the use of asbestos-containing products;

m.     Manufacturing and/or selling equipment that contained asbestos-containing components when sold, which by Defendants' design, expectation and intent were to wear out and be replaced on a regular basis during the equipment's lifetime.  Furthermore, Manufacturing Defendants knew, expected and intended that the original fungible asbestos-containing components were intended to be replaced with asbestos-containing replacement parts and that the hazards attendant with working with or around the asbestos-containing replacement parts would be identical to those of working with the fungible original parts;

n.     Benefitting financially from designing their equipment to need periodic maintenance that required the repeated removal and replacement of asbestos-containing components, among other reasons, being able to charge more money for their equipment than they would have if their products were designed to last only as long as the fungible original asbestos-containing components and/or creating a market for sale of replacement parts;

o.     Knowing, or in the exercise of reasonable care should have known, that the expected and intended maintenance of their equipment would cause dust to be released in the working area and breathing zone of individuals such as Plaintiff JOHN R. MCCABE, SR.;

p.     Failing to adequately warn Plaintiff JOHN R. MCCABE, SR. that replacement parts for the asbestos-containing portions of their asbestos-containing equipment would more likely than not also contain asbestos and that handling and use of those asbestos containing parts could be injurious to his health;

q. Failing to adequately warn Plaintiff JOHN R. MCCABE, SR. that asbestos-containing thermal insulating products would be used on their equipment, which Manufacturing Defendants' designed to operate in high temperature systems, and that the intended and necessary use, operation, maintenance, repair and/or installation of their equipment would cause the release of respirable dust that could be injurious to his health;

r. Failing to adequately warn Plaintiff JOHN R. MCCABE, SR. that the thermal insulation products they knew or should have known was used on their equipment contained asbestos and that the insulation of their equipment would generate respirable asbestos-containing dust that could be injurious to his health;

s. Providing manuals and instructions with their equipment that failed to include any warnings regarding the asbestos dangers to be encountered when maintaining, servicing and operating their equipment;

t. Failing to attach to and/or provide warnings on their equipment; and

u. Instructing those maintaining, repairing and operating their equipment to scrape, wire brush, pull and otherwise manipulate asbestos-containing components and/or products used in and/or on their equipment in a manner that necessarily caused asbestos dust to be released into the breathing zone of workers such as Plaintiff JOHN R. MCCABE, SR.

WHEREFORE, Plaintiffs demand compensatory damages and trial by jury on all issues so triable in this cause.

## COUNT IV – FAILURE TO EXERCISE REASONABLE CARE
## (ALL DEFENDANTS)

45. Plaintiffs incorporates by reference into Count IV all other relevant allegations in this Complaint.

46. The actions of Defendants described constitute a failure to exercise reasonable care towards Plaintiff JOHN R. MCCABE, SR.

47. In addition to failing to exercise reasonable care to adequately warn Plaintiff JOHN R. MCCABE, SR. and those working around him as described in Counts I and II, Defendants

failed to use reasonable care in designing, manufacturing and/or selling Asbestos Products and/or in specifying the use of asbestos-containing products.

48.     Defendants knew or should have known that asbestos is a deadly poison and a carcinogen, and that levels of asbestos-containing dust that are invisible to the naked eye can and do cause terminal illnesses.

49.     Defendants knew or should have known that any Asbestos Product must be tested to determine whether the Product releases asbestos into the air during handling, use or maintenance. Despite this knowledge, Defendants sold, manufactured, and/or produced Asbestos Products to which Plaintiff JOHN R. MCCABE, SR. was exposed without first either testing the Products or affirmatively determining that they had been reliably tested and did not release asbestos.

50.     Defendants knew or should have known that asbestos dust and other poisons used in the workplace can and do contaminate the worker's clothes, hair and person and that the contamination by such poisons can and does endanger workers who are exposed to the poisons when handling or coming into contact with the worker's contaminated clothing, hair and person.

51.     Defendants further failed to use reasonable care in designing or selling Asbestos Products to which Plaintiff JOHN R. MCCABE, SR. was exposed and/or in specifying the use of such Products, because Defendants knew or should have known that handling materials that contain asbestos requires the most stringent of precautions. Nevertheless, Defendants designed, manufactured and/or sold their Asbestos Products for and to Plaintiff, his employers, and others without ascertaining whether they were sufficiently knowledgeable, skilled and equipped to safely handle those Asbestos Products.

52.     Plaintiff JOHN R. MCCABE, SR.'s illness is a direct and proximate result of Defendants' Asbestos Products' defects, and Plaintiff has suffered the damages described in this Complaint.

WHEREFORE, Plaintiffs JOHN R. MCCABE, SR. and RITA A. MCCABE demand compensatory damages and trial by jury on all issues so triable in this cause.

## COUNT V - LOSS OF CONSORTIUM
### (ALL DEFENDANTS)

53.     Plaintiffs incorporate by reference into Count VI all other relevant allegations in this Complaint.

54.     Plaintiff RITA A. MCCABE is the lawful spouse of Plaintiff JOHN R. MCCABE, SR. At the time that JOHN R. MCCABE, SR. was diagnosed with mesothelioma, RITA A. MCCABE was cohabitating with JOHN R. MCCABE, SR. and enjoying his companionship and care.

55.     As a direct and proximate result of the conduct described in the allegations contained in this Complaint, Plaintiff RITA A. MCCABE has suffered the loss of consortium and damage to the marital and social relationship, including, but not limited to: the loss of JOHN R. MCCABE, SR.'s services, comfort, affection, and the effects of JOHN R. MCCABE, SR.'s disease upon Plaintiff RITA A. MCCABE and their relationship and daily activities due to his injuries and disabilities. They have further incurred expenses for medical care and treatment rendered to JOHN R. MCCABE, SR., and they will continue to incur such expenses.

WHEREFORE, Plaintiffs demand compensatory damages and trial by jury on all issues so triable in this cause.

## DAMAGES

56.     As a direct and proximate result of Defendants' negligence and defective products as described above, Plaintiff JOHN R. MCCABE, SR. developed terminal malignant mesothelioma and/or other asbestos-related diseases, which has caused Plaintiff to suffer great and lasting physical pain and mental anguish.

57.     Plaintiff's exposure to asbestos as a result of Defendants' negligence and/or defective Asbestos Products caused and contributed to Plaintiff's injuries. Plaintiff's injuries arose out of, were connected to, and were incidental to, the manufacture, sale and distribution by Defendants of their Asbestos Products.

58.     As a direct and proximate result of Defendants' negligent conduct and defective products described above, Plaintiff has been required to undergo medical care and treatment for his injuries and he has been obliged to spend various sums of money to treat his disease and injuries. Plaintiff will continue to undergo additional medical care and treatment for his injuries in the future, and he will continue in the future to incur additional expenses associated with that medical care and treatment.

59.     As a direct and proximate result of Defendants' negligent conduct and defective products described above, Plaintiff's enjoyment of life and earnings capacity has been impaired and his life expectancy shortened.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues.

Respectfully submitted,

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD, LLC**

*/s/ Dawn Besserman*

Page 26 of 27

Dawn Besserman
Florida Bar No.: 1000428
Jennifer Green
Florida Bar No.: 1036184
777 S. Harbour Island Blvd., Ste. 310
Tampa, FL 33602
Telephone:     (314) 241-2003
Fax:           (314) 241-4838
dbesserman@mrhfmlaw.com
jgreen@mrhfmlaw.com
*Attorneys for Plaintiffs*

Dated: October 11, 2022

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing was filed with the Court via www.myflcourtaccess.com and served upon all Defendants via File & ServeXpress on this October 11, 2022.

*/s/ Dawn Besserman*
Dawn Besserman

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. _____

JOHN R. MCCABE, SR. and
RITA A. MCCABE,

Dawn Besserman: 1000428
Jennifer Green: 1036184

      Plaintiffs,

vs.

AEROJET ROCKETDYNE, INC., *et al.*

      Defendants.

_____/

**EXPOSURE SHEET FOR:  JOHN R. MCCABE, SR.**

| Defendant | Products | Witness | Years and Employment (All Approximate Dates) |
|---|---|---|---|
| AEROJET ROCKETDYNE, INC. | Asbestos-containing rocket and missile propulsion products and their components, including engines, motors, and missile liners | John McCabe | 1958- 1980/Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Cape Canaveral, Florida and El Monte, California |
| BASF CATALYSTS LLC | Asbestos-containing aerospace and industrial adhesives and linings | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General, Martin Marietta; Bendix Corp.; Lockheed Martin in Goosebay, Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California. |
| THE BOEING COMPANY, Individually and as successor-in-interest to Rockwell-Standard, l/k/a North American Rockwell, f/n/a Rockwell International, as successor-by-merger to General Motors Corporation and its aviation division Rocketdyne, as successor-in-interest to North American Aviation | Asbestos-containing aircraft, spacecraft and their components (including electrical, insulation, and friction components) | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |
| THE BOEING COMPANY, f/k/a McDonnell Douglas Corporation | Asbestos-containing aircraft and their components (including electrical, insulation, and friction components) | John McCabe | 1953-2000/ U.S. Air Force in Goosebay Labrador; Grandview, Missouri; and Cape Canaveral, Florida |

| | | | |
|---|---|---|---|
| CRANE CO. | Asbestos-containing valves, fire shields, and hosing | John McCabe | 1958- 1980/Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Cape Canaveral, Florida and El Monte, California |
| CURTISS-WRIGHT CORPORATION | Asbestos-containing aircraft engines, spacecraft and components | John McCabe | 1958-2000/ Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in; Cape Canaveral, Florida; and El Monte, California |
| DEXTER HYSOL AEROSPACE LLC | Asbestos-containing aerospace and industrial adhesives | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay, Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |
| THE DOW CHEMICAL COMPANY | Asbestos-containing aerospace sealants | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |
| EATON AEROQUIP, LLC | Asbestos-containing aerospace hoses and sleeves | John McCabe | 1953-2000/.U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |

| | | | |
|---|---|---|---|
| EATON CORPORATION | Asbestos-containing electrical equipment, wiring, switchboxes, control panels, arc chutes, transformers, tape, paper, gaskets, and sealants | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |
| FLINT HILLS RESOURCES, LLC | Asbestos-containing missile liner and pavement | John McCabe | 1958-2000/ Aerojet; Space General, Martin Marietta; Bendix Corp.; Lockheed Martin in; Cape Canaveral, Florida; and El Monte, California |
| FLOWSERVE US, INC., successor-in-interest Edward Valve & Manufacturing Company | Asbestos-containing valves and valve packing | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |
| FLOWSERVE US, INC., successor-in-interest Rockwell Manufacturing Co. | Asbestos-containing valves and valve packing | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |

| GENERAL CABLE CORPORATION | Asbestos-containing wire and cable | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |
|---|---|---|---|
| GOODRICH CORPORATION | Asbestos-containing packing, gaskets, cowlings, exhaust shields, coatings, exit cones, aircraft engine components, brakes and brake assembly insulators. | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General, Martin Marietta; Bendix Corp.; Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |
| THE GOODYEAR TIRE & RUBBER COMPANY | Asbestos-containing brakes assemblies and components | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |
| H.B. FULLER COMPANY | Asbestos-containing aerospace adhesives and resins | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General, Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |

| | | | |
|---|---|---|---|
| HENKEL CORPORATION | Asbestos-containing aerospace and industrial adhesives and linings | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |
| HLI SOLUTIONS, INC., f/k/a Hubbell Lighting, Inc., as successor-in-interest to Prescolite, Inc.; | Asbestos-containing explosion proof fittings | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General, Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |
| HONEYWELL INTERNATIONAL, INC., f/k/a Honeywell, Inc. | Asbestos-containing auxiliary power units and associated components | John McCabe | 1958- 1980/Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Cape Canaveral, Florida and El Monte, California. |
| HONEYWELL INTERNATIONAL, INC., Individually and as successor to AlliedSignal, Inc. and The Bendix Corporation | Asbestos-containing brakes and brake linings | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |

| | | | |
|---|---|---|---|
| IMO INDUSTRIES, INC., Individually and as successor-in-interest to Adel Fasteners | Asbestos-containing clamps, connectors, and components | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |
| INTERNATIONAL BUSINESS MACHINES CORPORATION | Asbestos-containing computers and components | John McCabe | 1958-2000/ Aerojet; Space General, Martin Marietta; Bendix Corp.; and Lockheed Martin in; Cape Canaveral, Florida; and El Monte, California |
| KOCH INDUSTRIES INC. | Asbestos-containing missile liner and pavement | John McCabe | 1958-2000/ Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in; Cape Canaveral, Florida; and El Monte, California |
| MERITOR, INC., f/k/a ARVINMERITOR, INC. | Asbestos-containing brake assemblies, brakes, and components | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |
| MORTON INTERNATIONAL, LLC | Asbestos-containing propulsion components, "O" rings, and aerospace adhesives | John McCabe | 1958-2000/ Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in; Cape Canaveral, Florida; and El Monte, California |

| | | | |
|---|---|---|---|
| NORTHROP GRUMMAN CORPORATION | Asbestos-containing aircraft and their components (including electrical, insulation, and friction components) | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |
| PARKER-HANNIFIN CORPORATION | Asbestos-containing aerospace components including hosing and aircraft brakes | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |
| PFIZER, INC. | Asbestos-containing talc | John McCabe | 1958-1965/ Aerojet and Space General in Cape Canaveral, Florida and El Monte, California |
| PNEUMO ABEX LLC | Asbestos-containing brakes and brake linings | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |
| REDCO CORPORATION | Asbestos-containing valves, fire shields, and hosing | John McCabe | 1958-2000/ Aerojet; Aerojet; Space General; Martin Marietta; Bendix Corp.; Lockheed Martin in; Cape Canaveral, Florida; and El Monte, California |

| | | | |
|---|---|---|---|
| ROHR, INC. | Asbestos-containing cowlings, exhaust shields, coatings, exit cones, aircraft engine components, brake assembly insulators. | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |
| SCHNEIDER ELECTRIC USA, INC. | Asbestos-containing motors, turbines, wiring, switchboxes, control panels, arc chutes, transformers, tape, paper, gaskets, and sealants | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |
| SHELL USA, INC. | Asbestos-containing aerospace adhesives | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |
| SPECIALTY CABLE CORP. | Asbestos-containing wire and cable | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |

| | | | |
|---|---|---|---|
| TEX-COTE LLC | Asbestos-containing paints and heat shields | John McCabe | 1958-2000/ Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Cape Canaveral, Florida; and El Monte, California |
| VANDERBILT MINERALS, LLC | Asbestos-containing talc | John McCabe | 1958-1965/ Aerojet and Space General in Cape Canaveral, Florida and El Monte, California |
| WYETH HOLDINGS LLC | Asbestos-containing aerospace adhesives and plastics | John McCabe | 1953-2000/ U.S. Air Force; Aerojet; Space General; Martin Marietta; Bendix Corp.; and Lockheed Martin in Goosebay Labrador, Grandview, Missouri; Cape Canaveral, Florida; and El Monte, California |

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CIVIL DIVISION 27 – PRODUCTS
LIABILITY ASBESTOS

CASE NO. _____

JOHN R. MCCABE, SR. and
RITA A. MCCABE,

      Plaintiffs,

vs.

AEROJET ROCKETDYNE, INC., *et al.*

      Defendants.

_____/

## INFORMATION FORM FOR: JOHN R. MCCABE, SR.

**All statements are based upon the information available to Plaintiff and counsel at this time. Plaintiff does not have personal knowledge regarding various aspects of these statements and investigation continues through the discovery process.**

Name:  John R. McCabe, Sr.
Address:  1563 Keys Gate Drive, Melbourne, FL 32940
Date of Birth: May 10, 1933
Date of Death: N/A
Marital Status:  Married
Date of Spouse's Death: N/A
Asbestos Disease: Malignant Epithelioid Mesothelioma of the Pleura
Documentation:  See Pathology Report attached to Complaint.
Locations and Dates of Exposure: See below chart.

| Product(s) | Years and Jobsites (All Dates Approximate) |
|---|---|
| Asbestos-containing aircraft, spacecraft, and aviation equipment and components (including but not limited to engines, brakes, adhesives, fittings, electrical boards, wire, clamps, tape, insulation, plastics, valves, and gaskets) | <ul><li>Years: 1953-2000</li><li>Occupational exposures while serving in the U.S. Air Force at various locations including Missouri and Canada</li><li>Occupational exposures while working for Aerojet Rocketdyne Inc. at various locations, including Cape</li></ul> |

1

| | |
|---|---|
| | Canaveral, Florida; and El Monte, California. <br> • Occupational exposures while working for Lockheed martin at various locations including Cape Canaveral, Florida; and the Marshall Islands. <br> • Occupational exposures while working for Bendix Corporation at various locations including Cape Canaveral, Florida. <br> • Occupational exposures while working for Martin Marietta Technologies at various locations including Cape Canaveral, Florida. |
| Asbestos-containing blankets, strips and various personal protective gear used in support of aerospace and aviation programs. | • Years: 1953-2000 <br> • Occupational exposures while working for Aerojet at various locations, including Cape Canaveral, Florida; and El Monte, California. <br> • Occupational exposures while working for Lockheed at various locations including Cape Canaveral, Florida; and the Marshall Islands. <br> • Occupational exposures while working for Bendix Corporation at various locations including Cape Canaveral, Florida. |
| Asbestos-containing drywall spray texture and joint compound products | • Years: 1950s-2000s <br> • Occupational exposures at the Cocoa Palms Trailer Park in Cape Canaveral Florida. <br> • Non-occupational exposures during personal home construction and remodeling at various locations, including in Florida. |

## AFFIRMATION OF JOHN R. MCCABE, SR.

Under penalties of perjury, I declare that I have read the foregoing Information Form and

that the facts stated in it are true, to the best of my knowledge and belief.

John R. McCabe sr.

JOHN R. MCCABE, SR.

3

*Forum Non Conveniens Fact Sheet*

Name of Plaintiff:   **John R. McCabe, Sr.**

Case Number: _____

1.   Residence of Plaintiff:

     a.   Does Plaintiff currently reside in Florida?
         **Yes.**

     b.   Did Plaintiff reside in Florida when alleged exposure to asbestos occurred?  If so, where?
         **Yes.  Plaintiff lived at various locations in Cape Canaveral, Satellite Beach, and Rockledge, Florida.**

2.   Asbestos Exposure:

     a.   Did any alleged asbestos exposure occur in Broward County, Florida?
         **Investigation continues.**

     b.   In which states, other than Florida, did alleged asbestos exposure occur?
         **Investigation continues.  Plaintiff was also exposed to asbestos in Missouri. Plaintiff also lived and worked in Canada, California, and the U.S. Marshall Islands during his lifetime.**

     c.   What percentage of total asbestos exposure occurred in Florida?
         **Unknown at this time as investigation continues, but a substantial portion of Plaintiff's exposure occurred in Florida.**

3.   Witnesses:
     a.   Do any fact witnesses reside in Florida?
         **Unknown at this time.  Investigation continues.**

     b.   Do any expert witnesses reside in Florida?
         **Unknown at this time whether any expert witnesses reside in Florida, as those witnesses have not yet been selected.**

4.   Medical treatment:
     a.   In which state did diagnosis of relevant disease take place?
         **Florida.**

     b.   In which state has plaintiff received medical treatment relevant to this lawsuit?

**Florida.**

c.     What percentage of said medical treatment was rendered in Florida?
       **100%**

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CIVIL DIVISION 27 – PRODUCTS
LIABILITY ASBESTOS

CASE NO. _____

JOHN R. MCCABE, SR. and
RITA A. MCCABE,

      Plaintiffs,

vs.

AEROJET ROCKETDYNE, INC., *et al.*

      Defendants.

_____/

## COLLATERAL SOURCE REPORT:  JOHN R. MCCABE, SR.

    Plaintiff John R. McCabe, Sr. states that, as of the time of this report, he is unable to state the amount of collateral source payments received by him, as those terms are defined in Fla. Stat. 774.207 and Fla. Stat. 768.76(2)(a)(1-4).  Plaintiff is unable to state the amount of collateral source payments for medical care at this time because the total amount of payments made by any collateral sources is unknown.

    Plaintiff will supplement this report with a total amount of any collateral source payments made at a time when that information is available.

    Plaintiff has received no other collateral source payments as defined by Fla. Stat. 774.207 and Fla. Stat. 768.76(2)(a)(1-4) at this time.

## AFFIRMATION OF JOHN R. MCCABE, SR.

Under penalties of perjury, I declare that I have read the foregoing Collateral Source Report and that the facts stated in it are true, to the best of my knowledge and belief.

JOHN R. MCCABE, SR.

# Brent C. Staggs, M.D.

Diplomat, American Board of Pathology

1906 Beechwood Street

Little Rock, Arkansas 72207

Phone (501) 831-0161

brentstaggs@comcast.net

June 29, 2022

RE: McCabe, John R. (DOB May 10, 1933)

Dear Sirs,

You have asked for my opinion regarding the diagnosis of Mr. McCabe's disease.

Report from Rockledge Regional Medical Center (RS 22 – 2209, June 6, 2022) diagnosed a right pleural biopsy as "involved by malignancy, differential diagnosis includes mesothelioma, primary lung carcinoma versus metastatic carcinoma". Addendum 1 indicated tumor cells positive for calretinin, HBME1, CK 7, and CK 5/6 but negative for CEA, TTF-1, CK 20, P 63, PSA, and PSMA. A second addendum relayed the results of immunohistochemical stains from GenPath diagnostics indicating tumor cells positive for D240, WT1, calretinin, and focal CK 5/6, P 53, BerEp4, and MOC 31 but negative for B72.3, Napsin A, TTF-1, and P 63. Their interpretation of this staining panel was "malignant neoplasm, favor mesothelioma".

Based on the information contained within this report it is my opinion to a reasonable degree of medical certainty that Mr. McCabe is diagnosed with primary pleural malignant mesothelioma.

I will supplement or amend this report as appropriate, if additional information becomes available.

Sincerely,

Brent C. Staggs, M.D.

1

# Brent C. Staggs, M.D.

Diplomat, American Board of Pathology

1906 Beechwood Street

Little Rock, Arkansas 72207

Phone (501) 831-0161

brentstaggs@comcast.net

September 30, 2022

RE: McCabe, John R. (DOB May 10, 1933)

Dear Sirs,

You have asked for my opinion regarding the diagnosis of Mr. McCabe's disease.

Report from Rockledge Regional Medical Center (RS 22 – 2209, June 6, 2022) diagnosed a right pleural biopsy as "involved by malignancy, differential diagnosis includes mesothelioma, primary lung carcinoma versus metastatic carcinoma". Addendum 1 indicated tumor cells positive for calretinin, HBME1, CK 7, and CK 5/6 but negative for CEA, TTF-1, CK 20, P 63, PSA, and PSMA. A second addendum relayed the results of immunohistochemical stains from GenPath diagnostics indicating tumor cells positive for D240, WT1, calretinin, and focal CK 5/6, P 53, BerEp4, and MOC 31 but negative for B72.3, Napsin A, TTF-1, and P 63. Their interpretation of this staining panel was "malignant neoplasm, favor mesothelioma".

I received 11 glass slides all labeled "RS 22 – 2209". One slide was received previously stained with H&E while the remainder were unstained. Microscopic examination demonstrated excisional biopsies of pleura showing extensive fibrosis with an invasive epithelial neoplasm. Tumor cells were large with large round and oval nuclei showing moderate pleomorphism, large nucleoli, vesicular chromatin, abnormal mitotic figures, and moderate to abundant amounts of eosinophilic cytoplasm. Tumor cells were arranged in cords and nests with destructive invasion throughout fibrous stroma. No mucin or keratin formation was detected. No alveolar lung parenchyma was available for review.

Based on the information contained within this report it is my opinion to a reasonable degree of medical certainty that Mr. McCabe is diagnosed with primary pleural malignant mesothelioma.

1

I will supplement or amend this report as appropriate, if additional information becomes available.

Sincerely,

Brent C. Staggs, M.D.

2

06/28/2022 11:06:50 AM -0400 FAXCOM                    PAGE 5   OF 8

RS22-2209

# genpath
an OPKO company

**Final Report**

| | | |
|---|---|---|
| **BOUIE, SHONDELL**<br>ROCKLEDGE REGIONAL MED CNT<br>110 LONGWOOD AVENUE<br>ROCKLEDGE, FL 32955<br>ACCT #: F101D        **MO**<br>P:(321) 638-2211  F:(321) 633-7085 | **MCCABE, JOHN R**<br>DOB: 05/10/1933    Age: 89Y  Sex: M<br>Surgical #: RS22 2209<br>Patient ID: RH535198<br>Address: 1563 KEYS GATE DR<br>MELBOURNE, FL 32940 | **Specimen ID:** 305174289<br>**Date Reported:** 08/13/2022 10:50 AM<br>**Date Collected:** 08/03/2022 Time Unknown<br>**Date Received:** 08/09/2022 3:20 PM<br>**Source:** PLEURA<br>**Clinical Information:** ICD10 code: C45.0 |

Additional Provider: HENRIQUES

## SOLID TUMOR IMMUNOHISTOCHEMICAL ANALYSIS

### INTERPRETATION

MALIGNANT NEOPLASM, FAVOR MESOTHELIOMA.

### RESULTS

| Antibody | Clone | Description | Results |
|---|---|---|---|
| B72.3 (TAG-72) | B72.3 | Breast tumor associated antigen | Negative |
| BerEP4 | BerEP4 | Epithelial antigen, adenocarcinoma subset | Focally Positive |
| EpCam | MOC31 | Epithelial cells; adenocarcinoma subset | Focally Positive |
| Napsin A | Polyclonal | Type II pneumocytes, Pulmonary Adenocarcinoma | Negative |
| Podoplanin | D2-40 | Lymphatic endothelium, germ cell tumors, others | Focally Positive |
| Wilm's Tumor (WT-1) | 6F-H2 | Desmoplastic SRCT, mesothelioma, Mullerian tumors, Wilm's tumor | Positive |
| TTF1 | 8G7G3/1 | Thyroid Transcription Factor-1; thyroid and lung tumors | Negative |
| Calretinin | SP65 | Mesothelial cells | Positive |
| p63 | 4A4 | Nuclear transcription factor, basal and myoepithelial cells | Negative |
| CK5/6 | D5/16 B4 | Squamous and mesothelial cells | Rare Cells Positive |
| p53 | DO-7 | Tumor suppressor gene mutation | Focally Positive |

### COMMENT

A positive control for each antibody has been reviewed and accepted.
This case has been peer-reviewed.

These tests were developed and their performance characteristics determined by BioReference Laboratories. They may not be cleared or approved by the U.S. Food and Drug Administration. The FDA has determined that such clearance or approval is not necessary. These tests are used for clinical purposes. They should not be regarded as investigational or for research. This laboratory has been approved by CLIA 88, designated as a high-complexity laboratory and is qualified to perform these tests.

Yu Chen, M.D.
Pathologist, ex. 8467
This report was electronically signed

BioReference Laboratories, Inc
481 Edward H. Ross Drive
Elmwood Park, NJ 07407
GenPath is a branch of of BioReference Laboratories, Inc.

James Weisbarger, M.D.

Page 1 of 1
Created 08/13/2022 11:05 AM

COPY TO: REQUESTING PHYSICIAN

CHART

PATH FILE

RL18 739672

### Rockledge Regional Medical Center
### Department of Pathology
110 Longwood Ave. Rockledge, FL 32955
(321)636-2211 Ext. 1333  Fax: (321)633-7085
Shondell Bouie MD

### Pathology Surgical Report

---

| | | |
|---|---|---|
| **Patient: MCCABE,JOHN R** | | **Specimen #: RS22-2209** |
| Account: RL0018739672 | DOB: 05/10/1933 | Collection Date: 06/03/22 |
| MRN: RH00535196 | Age/Sex: 89/M | Received Date: 06/06/22 0840 |
| Submit Dr: Ricardo A | Attend Dr: Ricardo A | Location: 3T.RH RL336-1 |
| Henriques, MD | Henriques, MD | |

---

Copies to  HENRI;HENRI;ABBSA01;AHMSHAK;SHEMI01.

---

Addendum
**_Addendum Number 2_**
Additional Solid Tumor Immunohistochemical analysis results- See send out testing section.

**Addendum Electronically Signed By:**  Shondell M Bouie, MD
Date: 06/13/22 1527
**_Addendum Number 1_**
-Immunohistochemical stains positive for calretinin, focally positive for HBME-1, CK7 and CK5/6; negative
for CEA, TTF1, CK20, P63, PSA and PSMA compatible with mesothelioma.  Additional
immunohistochemical stains are pending at GenPath for further confirmation and the results will be
reported within an addendum.

**Addendum Electronically Signed By:**  Shondell M Bouie, MD
Date: 06/09/22 1337

**Final Diagnosis**
A. Right pleural biopsy:
-involved by malignancy; differential diagnosis includes mesothelioma, primary lung carcinoma versus
metastatic carcinoma
-immunohistochemical stains and special stain pending for further workup and evaluation and the results
will be reported within an addendum
-please correlate with cytology case RC22-178, right pleural fluid

**Sendout Testing Results**
SOLID TUMOR IMMUNOHISTOCHEMICAL ANALYSIS
INTERPRETATION
MALIGNANT NEOPLASM, FAVOR MESOTHELIOMA.

**RESULTS**

| Antibody | Clone | Description | Results |
|---|---|---|---|
| B72.3 (TAG-72) | B72.3 | Breast tumor associated antigen | Negative |
| BerEP4 | BerEP4 | Epithelial antigen, adenocarcinoma subset | Focally Positive |
| EpCam | MOC31 | Epithelial cells; adenocarcinoma subset | Focally Positive |
| Napsin A | Polyclonal | Type II pneumocytes, Pulmonary Adenocarcinoma | Negative |

Pathology Surgical Report                    RS22-2209                    MCCABE,JOHN
                                                                          R\RL0018739672

| | | | |
|---|---|---|---|
| Podoplanin | D2-40 | Lymphatic endothelium, germ cell tumors, others | Focally Positive |
| Wilm's Tumor (WT-1) | 6F-H2 | Desmoplastic SRCT, mesothelioma, Mullerian tumors, Wilm's tumor | Positive |
| TTF1 | 8G7G3/1 | Thyroid Transcription Factor-1; thyroid and lung tumors | Negative |
| Calretinin | SP65 | Mesothelial cells | Positive |
| p63 | 4A4 | Nuclear transcription factor, basal and myoepithelial cells | Negative |
| CK5/6 | D5/16 B4 | Squamous and mesothelial cells | Rare Cells Positive |
| p53 | DO-7 | Tumor suppressor gene mutation | Focally Positive |

These tests were developed and their performance characteristics determined by BioReference
Laboratories. They may not be cleared or approved by the U.S. Food and Drug Administration. The FDA
has determined that such clearance or approval is not necessary. These tests are used for clinical
purposes. They should not be regarded as investigational or for research. This laboratory has been
approved by CLIA 88, designated as a high-complexity laboratory and is qualified to perform these tests.

**Tissues**
 A. Pleura - RIGHT

**Gross Description**
Received in formalin is a specimen labeled "McCabe, John R. right pleura." The specimen consists of
multiple irregular firm white-tan tissue fragments ranging from 3 to 18 mm in greatest dimension. The
specimen is submitted in toto in a single cassette.

PLL
Technical component performed at: Rockledge Regional Medical Center. 110 Longwood Avenue,
Rockledge FL. 32955. 321-636-2211// Steward Reference Laboratory 6800 Spyglass Ct., Melbourne, FL
32940
All controls show appropriate positive and negative staining (performed at Steward Reference Laboratory)
DISCLAIMER: (If applicable): All tissue being tested is formalin-fixed paraffin-embedded. The
performance characteristics of any analyte specific reagents (ASR) immunohistochemistry stains that may
have been used in this report have been determined by Rockledge/Melbourne Regional Medical Centers.
These tests have not been cleared or approved by the US Food & Drug Administration (FDA). These
tests are used for clinical purposes. Quantitative ER/PR: Primary antibodies are as follows: clone SP-1 for
ER, clone PgR636 for PgR. These antibodies are FDA cleared for in vitro diagnostic (IVD) use. The
antibodies were utilized in an immunohistochemistry assay using an automated slide stainer. Standard
assay conditions for ER/PR antibodies are as follows: high pH (7.9 – 8.1) antigen retrieval using heat
induced epitope retrieval pressure chamber for 20 minutes at 99- 100 degrees followed by primary
antibody incubation for 30 minutes, then staining with the EnVision Flex+ detection kit. ER/PR results are
interpreted in accordance with ASCO/CAP 2010 guidelines (percent stained cells). Criteria used to
determine a positive result is any nuclear staining intensity greater than or equal to 1%. This assay has
not been validated on decalcified tissues. Results should be interpreted with caution given the likelihood
of false negativity on decalcified specimens.

**Clinical History**
Mesothelioma.

Rockledge Regional Medical Center          2 of 3          110 Longwood Ave. Rockledge, FL 32955
Department of Pathology                                                    (321)636-2211

**Pathology Surgical Report**                    **RS22-2209**                    **MCCABE,JOHN**
                                                                                 **R\RL0018739672**

**Pathology Procedures**

CPT Procedures:     Hematoxylin + Eosin Stain
                    88305 Level 4 - Gross and Microscopic
                    IHC AB slide Additional 88341/9
                    IHC Stain 88342
                    Special Stain 88313

**Copies To**

Saima Abbas, MD
Shakil Ahmed, MD
Ricardo A Henriques, MD
Michael Jay Scott Sheridan, MD

**Reviewed**
I have personally performed a microscopic examination of the above specimen at Rockledge Regional
Medical Center, 110 Longwood Ave. Rockledge, Florida 32955

**Electronically Signed By:**   Shondell M Bouie, MD          **Date:** 06/07/22 1441

**Rockledge Regional Medical Center**
**Department of Pathology**
**110 Longwood Ave. Rockledge, FL 32955**
**(321)636-2211 Ext. 1333  Fax: (321)633-7085**
**Shondell Bouie MD**

**Pathology Surgical Report**

---

**Patient: MCCABE,JOHN R**                                 **Specimen #: RS22-2209**
Account: RL0018739672                                       Collection Date: 06/03/22
MRN: RH00535196               DOB: 05/10/1933               Received Date: 06/06/22 0840
Submit Dr: Ricardo A          Age/Sex: 89/M                 Location: 3T.RH RL336-1
Henriques, MD                 Attend Dr: Ricardo A
                              Henriques, MD

---

Copies to: HENRI;HENRI;ABBSA01;AHMSHAK;SHEMI01;

**Addendum**
*Addendum Number 2*
Additional Solid Tumor Immunohistochemical analysis results- See send out testing section.

**Addendum Electronically Signed By:**   Shondell M Bouie, MD
**Date: 06/13/22 1527**
*Addendum Number 1*
-Immunohistochemical stains positive for calretinin, focally positive for HBME-1, CK7 and CK5/6; negative for CEA, TTF1, CK20, P63, PSA and PSMA compatible with mesothelioma. Additional immunohistochemical stains are pending at GenPath for further confirmation and the results will be reported within an addendum.

**Addendum Electronically Signed By:**   Shondell M Bouie, MD
**Date: 06/09/22 1337**

**Final Diagnosis**
A. Right pleural biopsy:
-involved by malignancy; differential diagnosis includes mesothelioma, primary lung carcinoma versus metastatic carcinoma
-immunohistochemical stains and special stain pending for further workup and evaluation and the results will be reported within an addendum
-please correlate with cytology case RC22-178, right pleural fluid

**Sendout Testing Results**
SOLID TUMOR IMMUNOHISTOCHEMICAL ANALYSIS
INTERPRETATION
MALIGNANT NEOPLASM, FAVOR MESOTHELIOMA.

RESULTS

| Antibody | Clone | Description | Results |
|---|---|---|---|
| B72.3 (TAG-72) | B72.3 | Breast tumor associated antigen | Negative |
| BerEP4 | BerEP4 | Epithelial antigen, adenocarcinoma subset | Focally Positive |
| EpCam | MOC31 | Epithelial cells; adenocarcinoma subset | Focally Positive |
| Napsin A | Polyclonal | Type II pneumocytes, Pulmonary Adenocarcinoma | Negative |

**Pathology Surgical Report**             RS22-2209                    MCCABE, JOHN
                                                                      R\RL0018739672

| Podoplanin | D2-40 | Lymphatic endothelium, germ cell tumors, others | Focally Positive |
| Wilm's Tumor (WT-1) | 6F-H2 | Desmoplastic SRCT, mesothelioma, Mullerian tumors, Wilm's tumor | Positive |
| TTF1 | 8G7G3/1 | Thyroid Transcription Factor-1; thyroid and lung tumors | Negative |
| Calretinin | SP65 | Mesothelial cells | Positive |
| p63 | 4A4 | Nuclear transcription factor, basal and myoepithelial cells | Negative |
| CK5/6 | D5/16 B4 | Squamous and mesothelial cells | Rare Cells Positive |
| p53 | DO-7 | Tumor suppressor gene mutation | Focally Positive |

These tests were developed and their performance characteristics determined by BioReference Laboratories. They may not be cleared or approved by the U.S. Food and Drug Administration. The FDA has determined that such clearance or approval is not necessary. These tests are used for clinical purposes. They should not be regarded as investigational or for research. This laboratory has been approved by CLIA 88, designated as a high-complexity laboratory and is qualified to perform these tests.

**Tissues**
A. Pleura - RIGHT

**Gross Description**
Received in formalin is a specimen labeled "McCabe, John R, right pleura." The specimen consists of multiple irregular firm white-tan tissue fragments ranging from 3 to 18 mm in greatest dimension. The specimen is submitted in toto in a single cassette.

PLL
Technical component performed at: Rockledge Regional Medical Center. 110 Longwood Avenue, Rockledge FL. 32955. 321-636-2211// Steward Reference Laboratory 6800 Spyglass Ct., Melbourne, FL 32940
All controls show appropriate positive and negative staining (performed at Steward Reference Laboratory) DISCLAIMER: (If applicable) All tissue being tested is formalin-fixed paraffin-embedded. The performance characteristics of any analyte specific reagents (ASR) immunohistochemistry stains that may have been used in this report have been determined by Rockledge/Melbourne Regional Medical Centers. These tests have not been cleared or approved by the US Food & Drug Administration (FDA). These tests are used for clinical purposes. Quantitative ER/PR: Primary antibodies are as follows: clone SP-1 for ER, clone PgR636 for PgR. These antibodies are FDA cleared for in vitro diagnostic (IVD) use. The antibodies were utilized in an immunohistochemistry assay using an automated slide stainer. Standard assay conditions for ER/PR antibodies are as follows: high pH (7.9 – 8.1) antigen retrieval using heat induced epitope retrieval pressure chamber for 20 minutes at 99- 100 degrees followed by primary antibody incubation for 30 minutes, then staining with the EnVision Flex+ detection kit. ER/PR results are interpreted in accordance with ASCO/CAP 2010 guidelines (percent stained cells). Criteria used to determine a positive result is any nuclear staining intensity greater than or equal to 1%. This assay has not been validated on decalcified tissues. Results should be interpreted with caution given the likelihood of false negativity on decalcified specimens.

**Clinical History**
Mesothelioma.

Rockledge Regional Medical Center          2 of 3          110 Longwood Ave. Rockledge, FL 32955
Department of Pathology                                    (321)636-2211

Pathology Surgical Report                    RS22-2209                        MCCABE,JOHN
                                                                              R\RL0018739672

**Pathology Procedures**
CPT Procedures:        Hematoxylin + Eosin Stain
                       88305 Level 4 - Gross and Microscopic
                       IHC AB slide Additional 88341/9
                       IHC Stain 88342
                       Special Stain 88313

**Copies To**

Saima Abbas, MD
Shakil Ahmed, MD
Ricardo A Henriques, MD
Michael Jay Scott Sheridan, MD

**Reviewed**
I have personally performed a microscopic examination of the above specimen at Rockledge Regional
Medical Center, 110 Longwood Ave. Rockledge, Florida 32955

**Electronically Signed By:**    Shondell M Bouie, MD        **Date:** 06/07/22 1441